FILED
U. S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

APR 0 1 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | FILED UNDER SEAL **BY** DEPUTY_____ |
| | § | No. 9:26CR_ 10 _ |
| v. | § | |
| | § | Judge Crone — Hawthorn |
| JARROD DURANT WILBORN (1) | § | |
| WELDON GREER JR. a/k/a "SEAN | § | |
| LOPEZ" (2) | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

#### *The Small Business Administration*

1.     The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

#### *CARES Act*

2.     In 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act was signed into law. It provided economic relief to help Americans cope with the economic impact of the COVID-19 global pandemic. The Act authorized forgivable loans to small businesses through the Paycheck Protection Program (PPP), and Congress later authorized

Indictment – Page 1

additional PPP funding. Additionally, the CARES Act authorized other relief, such as the Economic Injury Disaster Loan (EIDL). The SBA administered the PPP and EIDL loans.

### *Paycheck Protection Program*

3.    The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation, its average monthly payroll expenses, and its number of employees. These figures were used to calculate the amount of money the business was eligible to receive under the PPP.

4.    A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as federal income tax documents. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers in the United States. Once approved, the business received the PPP loan proceeds via an electronic funds wire transfer from the third-party lender to a financial account under the control of the business.

### *Economic Injury Disaster Loan*

5.    EIDL was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. The CARES

Indictment – Page 2

Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. To obtain an EIDL loan, a qualifying business was required to apply to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

6.    EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described in paragraph 5 above. Any funds issued under an EIDL loan were issued directly by the SBA.

7.    EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds. The SBA PPP Borrower Application Form lists numerous certifications and authorizations that the borrower must certify, including that all SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the PPP rule. The application also contains a certification which is

Indictment – Page 3

initialed by the borrower to certify in good faith that the funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP rule, and states that "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

## Count One

Violation: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

From approximately in or around April of 2020, and continuing through June 3 2024, the exact date being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendants **Jarrod Durant Wilborn** and **Weldon Greer Jr. a/k/a "Sean Lopez"**, ("defendants" herein), with others both known and unknown to the Grand Jury, did knowingly and willfully combine, conspire and agree with each other, and with others known and unknown to the Grand Jury, to devise a scheme to defraud others, and to obtain money by means of false and fraudulent pretenses, representations and promises; and for the purpose of executing the scheme to defraud, caused a signal to be transmitted by means of a wire communication in interstate commerce of any writings, signs, signals, pictures, and sounds for the purpose of executing the scheme, in violation of 18 U.S.C. § 1343.

## Overview of the Conspiracy

The defendants, led by **Jarrod Durant Wilborn (Wilborn)** and **Weldon Greer Jr. a/k/a "Sean Lopez" (Greer)**, executed a scheme to defraud lenders and the SBA. **Wilborn** and **Greer** recruited co-conspirators to submit applications to obtain PPP and EIDL loans.

Indictment – Page 4

Once enlisted, **Wilborn** assisted his co-conspirators with the application paperwork, including fabricating supporting documentation and submitting the application through online portals. On the applications, the defendants misrepresented material information, such as the true nature of their business, the number of employees, and the amount of payroll. Based on these material misrepresentations, the SBA, and other financial institutions, on behalf of the SBA, approved and issued loans to the defendants and their coconspirators. Once in receipt of the fraudulently obtained funds, the defendants and their coconspirators did not use the money as represented and intended, such as to pay employee salaries, cover fixed debt and utility payments, and continue health care benefits for employees. Instead, the defendants spent the funds on various personal expenses.

<u>**Manner and Means of the Conspiracy**</u>

8.       The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among others, the following:

a. The defendants registered and used sham, non-operational businesses, and in other instances existing businesses, under which they could submit PPP loan and EIDL applications, including a business located in the Eastern District of Texas.

b. The defendants opened bank accounts under their names and their businesses or caused co-conspirators to do the same to receive, deposit, and transfer PPP and EIDL funds.

c. The defendants submitted materially false and fraudulent PPP and EIDL loan applications, misrepresenting, among other things, the number of employees and monthly payroll expenses.

d. The defendants submitted falsified and fabricated supporting documentation in support of their loan applications.

e. The defendants used the PPP and EIDL funds for unauthorized personal purposes, including cash withdrawals.

f. The defendants caused transmissions that affected interstate commerce by sending wire transfers and by accessing and submitting the PPP loan and EIDL applications online.

g. The defendants devised a scheme to defraud lenders and the SBA in order to obtain PPP loans and EIDL's on behalf of other borrowers and themselves by causing materially false and fraudulent PPP loan and EIDL applications to be filed with PPP lenders and the SBA. The materially false and fraudulent applications caused the PPP lenders and the SBA to approve the loans. For the purpose of executing the above scheme to defraud, defendants caused the PPP lenders and the SBA to transmit, by means of interstate wire communications, PPP loan proceeds and EIDL proceeds into the bank accounts of the borrowers, including through computer servers located in the Eastern District of Texas.

h. The borrowers paid a portion of the fraudulently obtained PPP and SBA funds to the defendants or in the case of the fraudulent loans received by the defendants directly, defendants would keep the entirety of the proceeds. Such fees paid by the borrowers to the defendants ranged from $2,000 to $50,000 per loan.

i. The defendants falsified and fabricated supporting documentation required for PPP loan applications. Said fabrication was on behalf of other borrowers. For

Indictment – Page 6

instance, a Schedule C Profit/Loss from Business form is a schedule attached to a U.S. Individual Income Tax Return, Form 1040, that taxpayers use to report income and expenses from a business owned by the taxpayer. A Schedule C was required as part of a typical PPP application and was falsified and fabricated by defendants to induce financial institutions to make the PPP loans.

j. The defendants caused materially false PPP and EIDL applications to be submitted on behalf of borrowers, lying about, among other things, the existence and operation of businesses and business income as well as the number of employees and payroll expenses.  The defendants assisted numerous borrowers, including and not limited to those identified in this indictment, in submitting false and fraudulent PPP loan and EIDL applications.

## Acts in Furtherance of the Conspiracy

During and in furtherance of the conspiracy, at least one of the co-conspirators committed at least one of the following acts along with other acts not specifically listed in this indictment in the Eastern District of Texas and elsewhere.

### *Fraudulent PPP loans obtained during the conspiracy*

In furtherance of the scheme to defraud, **Wilborn** knowingly and willfully falsified supporting documentation for numerous PPP loan applications. The falsification of supporting documents and subsequent application submissions were intended to defraud the banks receiving the applications. The following loan applications were submitted as during and as part of the conspiracy:

| Loan Number | Date on or about | Description of Interstate Wire |
|---|---|---|
| Loan #....98901 | April 26, 2021 | **Wilborn** assisted BORROWER 1 in filing a PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The fraudulent application caused Bank 1 to approve BORROWER 1's PPP loan and to transmit, by means of a wire communication in interstate commerce, approximately $20,832 in PPP loan proceeds into BORROWER 1's bank account. BORROWER 1 then had a portion of the fraudulently obtained PPP funds, approximately $2,071, paid to **Greer**. **Greer** recruited and directed BORROWER 1 to participate in the scheme. |
| Loan #....17906 | June 24, 2020 | **Wilborn** assisted **Greer** in filing the PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The fraudulent application caused Bank 1 to approve **Greer**'s PPP loan and to transmit, by means of a wire communication in interstate commerce, approximately $20,052 in PPP loan proceeds into **Greer**'s bank account. A review of **Greer**'s bank account showed the loan proceeds were not used for legitimate business expenses. |
| Loan #....38310 | January 20, 2021 | **Wilborn** assisted **Greer** in filing the PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The PPP loan was purportedly for a business, 18Until.com, owned by **Greer**. The fraudulent application caused Bank 2 to approve **Greer**'s PPP loan and to transmit, by means of a wire communication in interstate commerce, approximately $20,833 in PPP loan proceeds into **Greer**'s bank account. A review of **Greer**'s bank account showed the loan proceeds were not used for legitimate business expenses. **Greer** identified the location of the purported business as being in the Eastern District of Texas. |
| Loan #....48701 | April 1, 2021 | **Wilborn** assisted **Greer** in filing the PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The PPP loan was purportedly for a business, Plus Publishing, owned by **Greer**. The fraudulent application caused Bank 3 to approve **Greer**'s PPP loan and to transmit, by |

Indictment – Page 8

| | | |
|---|---|---|
| | | means of a wire communication in interstate commerce, approximately $142,000 in PPP loan proceeds into **Greer**'s bank account. The loan proceeds were not used for legitimate business expenses. Plus Publishing is a purported business located at **Greer**'s residence in Center, Texas, within the Eastern District of Texas. |
| Loan #....87809 | June 3, 2020 | **Wilborn** filed the PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The PPP loan was purportedly for a business, Chirp Enterprise, owned by **Wilborn**. The fraudulent application caused Bank 4, to approve **Wilborn**'s PPP loan and to transmit, by means of wire communication in interstate commerce, approximately $203,135 in PPP loan proceeds into **Wilborn**'s bank account. The loan proceeds were not used for legitimate business expenses. |
| Loan #....88706 | December 6, 2021 | **Wilborn** filed the PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The PPP loan was purportedly for a business, PLC Development LLC, owned by **Wilborn**. The fraudulent application caused Bank 5, to approve **Wilborn**'s PPP loan and to transmit, by means of a wire communication in interstate commerce, approximately $143,980 in PPP loan proceeds into **Wilborn**'s bank account. The loan proceeds were not used for legitimate business expenses. |
| Loan #....47900 | June 18, 2020 | **Wilborn** assisted BORROWER 2 in filing the PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The fraudulent application caused Bank 4 to approve BORROWER 2's PPP loan and to transmit, by means of a wire communication in interstate commerce, approximately $20,832 in PPP loan proceeds into BORROWER 2's bank account. |
| (Loan #....89010) | April 17, 2021 | Bank 6, **Wilborn** assisted BORROWER 3 in filing the PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The fraudulent application caused Bank 6, to approve BORROWER 3's PPP loan and to transmit, by means of a wire communication in interstate commerce. approximately $20,832 in PPP loan proceeds into BORROWER 3's bank account. |

Indictment – Page 9

| Loan #....68706 | April 9, 2021 | **Wilborn** assisted BORROWER 4 in filing the PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The fraudulent application caused Bank 3 to approve BORROWER 4's PPP loan and to transmit, by means of a wire communication in interstate commerce, approximately $73,693, in PPP loan proceeds into BORROWER 4's bank account. |
|---|---|---|
| Loan #....48606 | March 4, 2021 | **Wilborn** assisted BORROWER 5 in filing the PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The fraudulent application caused Bank 3 to approve BORROWER 5's PPP loan and to transmit, by means of a wire communication in interstate commerce, approximately $167,722, in PPP loan proceeds into BORROWER 5's bank account. |
| Loan #....58603 | March 19, 2021 | **Wilborn** assisted BORROWER 6 in filing the PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The fraudulent application caused Bank 3 to approve BORROWER 6's PPP loan and to transmit, by means of a wire communication in interstate commerce, approximately $143,040, in PPP loan proceeds into BORROWER 6's bank account. |
| Loan #....28705 | March 24, 2021 | **Wilborn** assisted BORROWER 7 in filing the PPP loan application, which contained materially false and fraudulent representations made by **Wilborn**. The fraudulent application caused Bank 3 to approve BORROWER 7's PPP loan and to transmit, by means of a wire communication in interstate commerce, approximately $135,000, in PPP loan proceeds into BORROWER 7's bank account. |

*Fraudulent EIDL obtained during the conspiracy*

In furtherance of the scheme to defraud, **Wilborn** knowingly and willfully falsified supporting documentation for numerous EIDL applications. The falsification of supporting documents and subsequent application submissions were intended to defraud the banks

Indictment – Page 10

receiving the applications. The following loan applications were submitted as part of the conspiracy:

| Loan Number | Date on or about | Description of Interstate Wire |
|---|---|---|
| Loan #....78004 | June 24, 2020, and July 7, 2020 | **Wilborn** obtained an EIDL loan for approximately $160,000 for a company, Woods Designs, owned by BORROWER 1. The funds from the loan were deposited into BORROWER 1's account at Bank 3. The loan application claimed Woods Designed employed sixteen people. At no time did Woods Design have employees or earn income. **Greer** recruited BORROWER 1 to the scheme and instructed BORROWER 1 to establish the business to further the scheme and establish a bank account for the same purpose. |
| Loan #....11234 | July 7, 2020 | **Wilborn** obtained an EIDL loan for approximately $123,900 for a company, Plus Publishing, owned by **Greer**. The funds from the loan were deposited into **Greer**'s account at Bank 3. The loan application submitted false information regarding Plus Publishing operating expenses. Plus Publishing is a purported business located at **Greer**'s residence in Center, Texas, within the Eastern District of Texas. |
| Loan #....67906 | June 18, 2020 | **Wilborn** obtained an EIDL loan for approximately $449,900 (Loan #....67906) for a company, PLC Development LLC, owned by **Wilborn**. The funds from the loan were deposited into **Wilborn**'s account at Bank 7. The loan application submitted false information regarding PLC Development LLC operating expenses as the company did not conduct any actual business. |
| Loan #....28205 | August 3, 2020 | **Wilborn** obtained an EIDL loan for approximately $121,500 for a company, Chirp Concerts, owned by **Wilborn**. The funds from the loan were deposited into **Wilborn**'s account at Bank 8. The loan application submitted false information regarding Chirp Concerts operating expenses. |
| Loan #....88002 | June 24, 2020 | **Wilborn** obtained an EIDL loan for approximately $121,000 (Loan #....88002) for a company, Blasé Clothing Brand, owned by BORROWER 8. The funds from the loan were deposited into BORROWER 8's account at Bank 9. The loan application submitted false |

| | | |
|---|---|---|
| | | information regarding Blasé Clothing Brand operating expenses and the funds were used for personal expenses. |
| Loan #....50731 | June 24, 2020 | **Wilborn** obtained an EIDL loan funds advance in the amount of $1,000 for a company owned by BORROWER 3. The funds from the advance loan were deposited into BORROWER 3's account at Bank 8. The loan application submitted false information regarding the company. The funds were transferred through a computer server located in the Eastern District of Texas. |
| Loan #....97900 | June 24, 2020 | **Wilborn** obtained an EIDL loan for approximately $105,000 for a company, Spidernation LLC, owned by BORROWER 10. The funds from the loan were deposited into BORROWER 10's account at Bank 11. The loan application submitted false information regarding Spidernation LLC's operating expenses. The funds were transferred through a computer server located in the Eastern District of Texas. |
| Loan #....38207 | December 17, 2020 | **Wilborn** obtained an EIDL loan for approximately $111,700 for a company, Afterlife Social Club, owned by BORROWER 5. The funds from the loan were deposited into BORROWER 5's account at Bank 3. The loan application submitted false information regarding Afterlife Social Club's operating expenses. |
| Loan #....48003 | July 8, 2020 | **Wilborn** obtained an EIDL loan for approximately $103,500 for a company, Fancy Feet, owned by BORROWER 11. The funds from the loan were deposited into BORROWER 11's account at Bank 7. The loan application submitted false information regarding Fancy Feet's operating expenses. |
| Loan #....98002 | June 21, 2020 | **Wilborn** obtained an EIDL loan for approximately $133,800 for a company, Transport V.I.P., LLC, owned by BORROWER 12. The funds from the loan were deposited into BORROWER 12's account at Bank 12. The loan application submitted false information regarding Transport V.I.P., LLC's operating expenses. |
| Loan #....18105 | July 22, 2020 | **Wilborn** obtained an EIDL loan for approximately $114,000 (Loan #....18105) for a company, Ethiop Group LLC, owned by BORROWER 13. The funds from the loan were deposited into BORROWER 13's account at Bank 7. The loan application submitted false information regarding Ethiop Group LLC's operating expenses. |

| Loan #....98000 | July 6, 2020 | **Wilborn** obtained an EIDL loan for approximately $101,500 (Loan #....98000) for a company, Square Inspection Services, owned by BORROWER 14. The funds from the loan were deposited into BORROWER 14's account at Bank 11. The loan application submitted false information regarding Square Inspection Services operating services. The funds were transferred through a computer server located in the Eastern District of Texas. |

All in violation of 18 U.S.C. § 1349.

### Special Finding

It is further alleged that the above violation occurred in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), specifically the Presidential Declaration of Emergency for COVID-19.

In violation of 18 U.S.C. §§ 1343 and 1349.

### NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE
Criminal Forfeiture Pursuant to 18 U.S.C. § 981(a)(1), 982(a)(2) and 28 U.S.C. § 2461

1. The allegations contained in Count One are hereby realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

2. As a result of committing he offense as alleged in this Indictment, defendants shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1), 982(a)(2) and 28 U.S.C. § 2461 any and all property, real or personal, involved in or traceable to property involved

Indictment – Page 13

in the offense, including proceeds obtained directly or indirectly from the offense, and the following:

## Cash Proceeds

A sum of money equal to $3,730,385.00 in United States currency, and all interest and proceeds traceable thereto, representing the amount of proceeds obtained by the defendant as a result of the offense alleged in the Indictment, for which the defendant is personally liable. Each defendant is individually liable for the money judgment as shown below:

(a) Based on **Jarrod Durant Wilborn**'s involvement, he is personally liable for $3,423,600.00 in United States currency.

(b) Based on **Weldon Greer Jr.**'s involvement, he is personally liable for $306,785.00 in United States currency.

## Substitute Assets

If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(a) cannot be located upon the exercise of due diligence;
(b) has been transferred or sold to, or deposited with, a third party;
(c) has been placed beyond the jurisdiction of the court;
(d) has been substantially diminished in value; or
(e) has been commingled with other property which cannot be divided without difficulty.

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above, including but not limited to all property, both real and personal, owned by the defendant.

Indictment – Page 14

By virtue of the commission of the felony offenses charged in this Indictment by the defendants any and all interest the defendants have in the above-described properties is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 982(a)(2) and 28 U.S.C. § 2461.

A TRUE BILL

_____
GRAND JURY FOREPERSON

JAY R. COMBS
UNITED STATES ATTORNEY

_____
DONALD S. CARTER
Assistant United States Attorney

_____April 1, 2026_____
Date

Indictment – Page 15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 9:26CR_____ |
| v. | § | |
| | § | Judge Crone |
| JARROD DURANT WILBORN (1) | § | |
| WELDON O. GREER JR. a/k/a "SEAN | § | |
| LOPEZ" (2) | § | |

## NOTICE OF PENALTY

### Count One

**Violation:**      18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)-related to a presidentially declared major disaster or emergency

**Penalty:**        A fine of $1,000,000, or twice the pecuniary gain to the defendant or loss of the victim(s), whichever is greater; imprisonment for not more than 30 years; and a term of supervised release of not more than 3 years.

**Special Assessment:**      $ 100.00

Notice of Penalty – Page 1